UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CARL RICHARD NANTELLE,

        Petitioner,

v.                                                       Case No. 2:06-cv-289
                                                        HON. ROBERT HOLMES BELL

JERI ANN SHERRY,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Carl Richard Nantelle filed this petition for writ of habeas corpus challenging the validity of his convictions for unlawfully driving away an automobile (UDAA) and operating a motor vehicle while impaired (OWI). Petitioner was convicted by jury and sentenced to three years, four months to five years imprisonment on each conviction. The Michigan Court of Appeals summarized the facts as follows:

> Nantelle and his roommates spent the evening of September 24, 2002, at Janie's, a pool hall in Iron Mountain. While at Janie's, Nantelle consumed at least three beers. The trio left Janie's at approximately 11:30 p.m., and returned to their apartment. When they arrived, however, Nantelle did not want to stay home, so one of his roommates, Eric Lequia, gave him permission to borrow Lequia's Ford Bronco to drive back to Janie's.
>
> At approximately 5:30 a.m., Iron Mountain police discovered the Bronco and a semi truck belonging to KSR Company, Inc. (KSR), in a ditch alongside Traders Mine Road. The officers were then dispatched to a residence on Stanton Street, which was within walking distance of the ditch. A Stanton Street resident reported that a man, who she later identified as Nantelle, had been in her yard at approximately 5:00 a.m., asking for her assistance in finding his girlfriend's car, which he claimed his girlfriend had driven into a

ditch. The homeowner testified that defendant appeared intoxicated. Police located Nantelle a short time later walking along Stanton Street. The officers also testified that Nantelle was visibly intoxicated.

The officers decided to conduct an OUIL investigation and began administering field sobriety tests, but Nantelle became aggressive, so they decided to put him in handcuffs for their safety. A patdown search of Nantelle revealed the keys to the semi truck in his pocket. According to the officers, at that point, Nantelle admitted being in the semi truck. The keys to the Bronco were later found in the cab of the semi truck. The officers arrested Nantelle for UDAA and continued the OUIL investigation. Later that morning, Nantelle was charged with UDAA and OUIL. A blood alcohol test showed that Nantelle's blood alcohol content at 8.00 a.m. on September 25, was 0.12 grams per deciliter.

At trial, KSR's owner testified that the semi truck was normally parked at a location about a quarter mile away from where the truck was found stuck in the ditch. The keys were kept inside the cab of the truck. KSR's owner further testified that he did not know Nantelle and had not given him permission to use the truck.

According to Nantelle, after arriving at Janie's, he met two construction workers and he agreed to go to another bar with them. Nantelle testified that one of the construction workers agreed to drive Lequia's Bronco to the Gold Nugget in Spread Eagle. Nantelle admitted that he and the men then proceeded to "get drunk." Nantelle explained that after awhile he went outside and passed out in the back of the Bronco. The next thing Nantelle recalled was waking up in the back of the Bronco, which was now in the ditch along Traders Mine Road. There was no sign of the construction workers. After Nantelle got out of the Bronco, he claimed that a semi truck pulled up, and the driver asked him if he needed help. Nantelle stated that the semi truck driver attempted to render assistance but then left the scene on foot. Nantelle speculated that the driver left because the semi truck was stuck.

Nantelle testified that approximately five minutes after the semi truck driver left he walked to a gas station and the station attendant offered to give him a ride home. According to Nantelle, he arrived back home at approximately 3:30 a.m. Nantelle claimed that he had an argument with this other roommate, Wendy Zablocki, and he consumed two or three more drinks. Nantelle explained that approximately one hour later he set out on foot to find the Bronco.

- 2 -

He recalled asking the Stanton Street resident for assistance. Nantelle admitted at trial that he made up the story about his girlfriend driving the car into the ditch. The jury convicted Nantelle, and he was sentenced to concurrent terms of forty months to five years' imprisonment for UDAA and third-offense OWI.

Petitioner maintains that his convictions were obtained in violation of his federal rights. Respondent has filed an answer. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his complaint:

I. Insufficient evidence of OWI in violation of due process US Const. Am XIV.

II. Insufficient evidence in violation of due process US Const. Am XIV.

III. Denied right to present a full defense and compulsory process of law in violation of the US Const Am VI, XIV.

IV. Illegal search and seizure and trial counsel was ineffective for not filing a motion to suppress and failing to move for the suppression of the keys on these grounds.

V. It was error to instruct the jury over defense objection of the lesser offense of OWI.

VI. The prosecutor denied defendant a fair trial by forcing defendant to comment on the credibility of prosecution witnesses and by vouching for the credibility of the police officers, in violation of the US Const. AM XIV.

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at

410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that there existed insufficient evidence to support his convictions. A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id.* It is clear that the evidence was sufficient to establish that petitioner committed the crime. The Michigan Court of Appeals explained, regarding the Operating While Under the Influence conviction, that:

> A person shall not operate a vehicle within this state when his ability to operate the vehicle is "visibly impaired" due to the consumption of intoxicating liquor. To convict a defendant of OWI, the prosecution needs to establish beyond a reasonable doubt that "'defendant's ability to drive was so weakened or reduced by consumption of intoxicating liquor that defendant drove with less ability than would an ordinary, careful and prudent driver. Such weakening or reduction

- 5 -

> of ability to drive must be visible to an ordinary, observant person.'" [*Oxendine v Secretary of State*, 237 Mich App 346, 354; 602 NW2d 847 (1999), quoting *People v Lambert*, 395 Mich 296, 305; 235 NW2d 338 (1975).
>
> A jury could have reasonably inferred from the facts and circumstances that Nantelle was driving the Bronco. Evidence showed that when the police officers discovered them, the vehicles were off the roadway in a ditch along Traders Mine Road and that the semi truck was stuck. Evidence also showed that the weather was clear and that the road surface was dry. Moreover, Nantelle admittedly consumed at least three beers before the time he set out in the Bronco and that his last known destination was a bar where he continued to drink. He was visibly intoxicated when he first encountered the police officers, and at 8:00 a.m. his blood alcohol level was still 0.12. Based on this evidence, the jury could have reasonably inferred that, due to the consumption of alcohol, Nantelle's ability to drive as an ordinary careful driver was reduced to the point where an ordinary, observant person would have noticed it. Viewing the evidence in a light most favorable to the prosecution, we conclude that a jury could have reasonably found that Nantelle was operating a vehicle while impaired.

Petitioner has not shown that the Michigan Court of Appeals' decision was unreasonable on his OWI conviction.

The Michigan Court of Appeals reversed petitioner's conviction on the UDAA, because even though petitioner had admitted that he was in the truck, his admission was made only after police officers discovered the keys to the truck in petitioner's pocket. The Michigan Court of Appeals found the statement inadmissible because the seizure of the keys by the officers violated the Fourth Amendment. The Michigan Supreme Court reversed the Michigan Court of Appeals on this issue, concluding that the seizure of the keys was lawful because probable cause existed for petitioner's arrest on the OWI charge at the time the keys were discovered. In light of petitioner's admission that he was in the truck and the fact that petitioner had the keys to the truck in his pocket, there existed sufficient evidence to convict petitioner of the UDAA offense. Accordingly, the

Michigan courts' decisions were not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in decisions that were based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Petitioner claims that the court erred by failing to require the prosecution to locate witness Wendy Zablocki. The Michigan Court of Appeals fully discussed the availability of Wendy Zablocki and her proposed testimony, explaining:

> Nantelle also insists that the trial court erred in excluding a letter purportedly written by an unavailable witness. Nantelle was unsuccessful in his attempts to locate his other roommate, Wendy Zablocki, to testify on his behalf at trial. Zablocki, however, allegedly sent Nantelle a letter that "identified a time" when he was with her on the night of the crime. He gave his defense counsel a copy of the letter ten days before the motion hearing held on October 10, 2003. In turn, defense counsel first notified the prosecution of the letter's existence just minutes before the hearing. Defense counsel stated that she was unable to locate the witness and wanted to admit the letter in lieu of the witness' testimony.
>
> The letter purportedly states that on the night in question Nantelle admitted to Zablocki that he was too drunk to drive. According to Nantelle, this establishes that he was not driving any vehicle at 4:00 a.m. Because Nantelle seeks to admit the letter for the truth of the matter asserted, i.e., that he was "too drunk to drive" in order to prove he did not drive, the letter constitutes inadmissible hearsay. No exceptions for unavailable witnesses are applicable. Even the "catch-all" exception to inadmissible hearsay when the declarant is unavailable does not apply. First, Nantelle failed to divulge the letter to the prosecution sufficiently in advance of trial in order to enable the prosecution to investigate it. Additionally, the requisite circumstantial guarantees of trustworthiness of the letter were severely lacking because the letter was neither signed nor dated, and the only individual who could supposedly testify to its authenticity was Nantelle himself. In the absence of further verification, Nantelle's self-serving claim that the unavailable witness did in fact write the letter is insufficient to withstand an attack on its authenticity. The trial court did not abuse its discretion in refusing to allow admission of the letter.

* * *

>Nantelle also alleges that the court had a duty to order the prosecution to assist in locating the author of the letter. This argument has not been preserved on appeal because defense counsel never complained or objected at the motion in limine that the prosecutor did not assist with the search for the witness. An issue not preserved for appeal is subject to review only for plain error affecting the defendant's substantial rights.
>
>A prosecuting attorney has a statutory duty to provide reasonable assistance to the defendant, upon request, to the extent necessary to locate and serve process upon a witness. In this case, defense counsel stated at trial that she did in fact seek the prosecution's help and was told that the prosecution had no information on Zablocki's whereabouts. Despite defense counsel's late start in locating her witnesses, the prosecutor responded in a timely manner that he had no information on the witness and defense counsel did not express dissatisfaction with the prosecution's actions with regard to the search for the witness in any way.
>
>Further, although the trial court gave defense counsel additional time to locate the witness, nowhere on the record does it indicate that defense counsel was denied further requested assistance by the prosecutor or that she was dissatisfied with what research the prosecution had done. The prosecution performed exactly what was asked of it and Nantelle neither expressed any dissatisfaction with the prosecution's assistance or lack thereof nor requested specific further assistance when defense counsel was given more time to locate the witness. Because Nantelle does not indicate any specific failure on the part of the prosecution to comply with its statutory duty, Nantelle's substantial rights were not violated.

Petitioner has not established how his constitutional rights were violated regarding this issue. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner asserts that the court erred by instructing the jury on the lesser included OWI offense. The Michigan Court of Appeals rejected petitioner's claim as not preserved and without merit based upon state law. The court stated:

> Although claims of instructional error and determinations whether an offense is a necessarily included offense are generally reviewed de novo, the issue in this case is unpreserved because Nantelle failed to object to the trial court's instruction on OWI on the ground now alleged on appeal. At trial, defense counsel objected to the OWI instruction, arguing that sufficient evidence did not support the instruction. However, on appeal, Nantelle argues that OWI is not a necessarily included lesser offense of OUIL. Thus, because an objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground, this issue is unpreserved and we review it for plain error.
>
> A jury may be instructed on a necessarily included lesser offense, but a jury may not be instructed on a cognate lesser offense. Nantelle, therefore, argues that it was error to instruct on the OWI charge because the offense of OWI is a cognate lesser offense, not a necessarily included lesser offense. However, we have previously established that the offense of OWI is a necessarily included lesser offense of OUIL. Further, the Legislature has provided specific authorization to permit a guilty verdict for an OWI charge for OUIL prosecutions. Therefore, the trial court was authorized to instruct the jury as it did on the lesser offense of OWI. Nantelle's substantial rights were not violated by this instruction.

Petitioner has failed to show that the Michigan Court of Appeals' decision was unreasonable. Moreover, this issue is a matter of state law. A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988). Therefore, it appears that this portion of petitioner's argument should be dismissed.

Petitioner asserts that his Fourth Amendment rights were violated based upon the search of his person which found the keys that police officers discovered in his pocket. Petitioner

asserts that this evidence should have been suppressed. Petitioner raised this issue, ultimately unsuccessfully, in the Michigan courts. In the opinion of the undersigned, petitioner's claim is subject to dismissal under the rule announced in *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Supreme Court concluded that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 482.

In *Riley v. Gray*, 674 F.2d 522 (6th Cir.), *cert. denied*, 459 U.S. 948 (1982), the Sixth Circuit interpreted *Stone* as requiring the district court to make two distinct inquiries in habeas proceedings:

> Initially, the district court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980). Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism. *See Boyd v. Mintz*, 631 F.2d 247, 250 (3rd Cir. 1980); *Gates v. Henderson*, 568 F.2d 830, 840 (2nd Cir. 1977) (*en banc*), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978).

*Id.* at 526 (footnote omitted). The record reveals no reason why petitioner would have been prevented from raising his Fourth Amendment claims in the state courts. Indeed, petitioner did have the opportunity to raise these issues in the state courts where they were ultimately rejected. Accordingly, in the opinion of the undersigned, petitioner is precluded from raising this claim under the rule announced in *Stone v. Powell*.

Petitioner claims that the prosecutor improperly forced him to comment on the credibility of a witness. The Michigan Court of Appeals concluded that no error occurred because this issue could have been easily cured by a proper and timely objection. The court stated:

Matters of credibility are to be determined by the trier of fact, so a prosecutor may not ask a defendant to comment on the credibility of prosecution witnesses. However, reversal of a conviction is not warranted if the prejudicial effect of the error could have been cured by a cautionary instruction or by precluding such further questioning. In this case, the prosecutor and Nantelle had the following exchange during Nantelle's testimony:

Q. (*By prosecution*:) How did [the keys] come to be found by the officers in your pants pocket?

A. (*Nantelle*:) They weren't found in my pants pocket.

Q. Well, then how to you explain that?

A. What is there to explain? They weren't in my pants pocket.

Q. *Are you accusing these officers, who have never seen you before, before that day, of risking their jobs, and their family security in order to nail you for a drunk driving by planting those keys in your pocket?*

A. I think you are overexaggerating [sic]. But they are, every, everyone who has testified.

Q. Is that what you are saying?

A. No it is not.

Q. *Are you saying that these officers are lying?*

A. Yeah. Definitely. Each one of them had a different story.

Q. They both said those keys were in your pocket.

A. No, they didn't.

Q. Yes, they did.

A. That wasn't the testimony.

Q. *So you are saying these officers risked their jobs to nail you for a drunk driving?*

>>DEFENSE COUNSEL: I'm going to object, Your Honor. How would he know that they are risking their jobs.
>
>>THE COURT: It has already been asked and answered.
>
>Q. (*By the prosecutor*:) *Do you think they would come in here and perjure themselves before this court under oath to say that these keys were on your pocket?*
>
>A. (*Nantelle*:) If it meant to justify their actions, yes.
>
>Q. That's your answer?
>
>A. Yes.
>
>Q. And you expect this jury to believe that?
>
>A. I hope they believe the truth. [Emphasis added.]
>
>The above exchange indicates that the prosecutor's strategy was to discredit Nantelle by inviting him to label the police officers "liars." Asking Nantelle to comment on the credibility of the prosecution's witnesses was improper because his opinion of their credibility was not probative of the matter. We conclude, however, that Nantelle was not denied a fair trial as a result of the prosecutor's actions because "'[a] timely objection by defense counsel could have cured any prejudice, either by precluding such further questioning or by obtaining an appropriate cautionary instruction.

Petitioner has failed to show how his rights were violated or that any prejudice resulted from these alleged errors. Ultimately, the issue for the Court is whether the prosecutor's conduct denied petitioner a fundamentally fair trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982). *See also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action). Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial. *See United States v. Chambers*, 944 F.2d

1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989). The Michigan Court of Appeals decision was not unreasonable based upon the facts and legal analysis. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: June 1, 2009